UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKELLDRICK WHITE,<br>CDCR #BA-7413,<br><br>                                    Plaintiff,<br><br>           vs.<br><br>I. PEREZ, Correctional Officer;<br>L. RODRIN, Correctional Officer;<br>O. QUIONEZ, Correctional Officer;<br>D. COLEMAN, Correctional Officer;<br>S. CHAT, Correctional Officer;<br>Q. JACKSON, Corrections Sergeant;<br>V. ABDI, Corrections Sergeant;<br>M. GONZALEZ, ISU Officer;<br>BRADLEY, Registered Nurse,<br><br>                                    Defendants. | Case No.:  3:19-cv-01499-WQH-AHG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT, EXHIBITS AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Plaintiff Rickelldrick White, a transgender prisoner[1] currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983.

---

[1] Because Plaintiff identifies as a transgender woman, the Court will use feminine pronouns when referring to her. *See* Compl., ECF No. 1 at 6; *see also* Pl.'s Ex. B ("Meraz Decl."), ECF No. 4 at 6-7.

1

Plaintiff claims various prison officials at RJD violated her Eighth Amendment rights and intentionally inflicted emotional distress upon her during an October 2, 2018, incident that resulted in multiple fractures to her left leg. *See* Compl., ECF No. 1 at 1-6; Ex. A ("Pl.'s Decl."), ECF No. 4 at 3-4.

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when she filed her Complaint; instead, she has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2).

## I.    Motion to Proceed IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which her account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of her IFP Motion, Plaintiff has submitted a copy of her CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at RJD. *See* ECF No. 3 at 1-3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff carried an average monthly balance of $59.90 and maintained $29.67 in average monthly deposits to her trust account for the 6 months preceding the filing of this action; but they also show she had an available balance of zero at the time of filing. *See* ECF No. 3 at 1, 3.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses her initial partial filing fee to be $11.98 pursuant to 28 U.S.C. § 1915(b)(1). The Court will direct the Secretary of the CDCR, or his designee, to collect this initial filing fee *only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

///

## II.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, her Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct," or "unadorned, the defendant-unlawfully-harmed me accusation[s]," fall short of meeting

///

this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached, referred to, or incorporated by reference to her Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B.   Plaintiff's Allegations

In her Complaint, as well as in separate sworn declarations submitted in support, Plaintiff claims that on October 2, 2018, while she and her cellmate George Meraz were about to enter the dayroom of RJD's Facility B at approximately 10:10 a.m., Plaintiff was stopped by Officer Perez, who informed her he was going to conduct a random clothed body search. *See* Pl.'s Decl., ECF No. 4 at 3. Plaintiff claims she complied with Perez's instructions, turned, faced and placed her hands on the wall, and spread her legs. *Id.* Both Plaintiff and Meraz claim Perez began searching her by patting her down starting from her shoulders and working his way down to her ankles. *Id.*; *see also* Meraz Decl., ECF No. 4 at 6. Plaintiff contends Perez then repeated the search a second time, but "more aggressively," before telling her he wanted to conduct a third unclothed body search in the unit sally port. *See* Compl., ECF No. 1 at 6; Pl.'s Decl., ECF No. 4 at 3.

Because she is transgender, Plaintiff "felt uncomfortable" and requested that a correctional sergeant supervise. *Id.* Instead, Plaintiff claims Perez "became very angry and hostile," restrained her hands behind her back, and began to "man handle" her while leading her toward the sally port. *Id.* Once inside, Plaintiff contends Perez "slammed" her against the wall, "roughly twisted [her] from side to side," "bear hug[ged]" her, then "slammed" her to cement ground, "causing a spiral fracture" in her left leg. *See* Compl.,

ECF No. 1 at 5; Pl.'s Decl., ECF 4 at 3. Plaintiff began to scream and cry that her leg was broken, but Perez "continued to physically assault [her]," and "punched [her] in the back of [her] head and pull[ed] her hair," while telling his partner, Officer Rodrin, to "call[] in a staff assault over his radio," and activating his personal alarm. *See* Pl.'s Decl., ECF No. 4 at 3; Meraz Decl., ECF No. 4 at 6. Both Plaintiff and Meraz claim she "fully complied" and "was not fighting back []or resisting in any way." *See* Compl., ECF No. 1 at 5; Meraz Decl., ECF No. 4 at 7.

Afterwards, while Plaintiff was handcuffed, placed in leg irons, and lay prone on the ground with an "obviously swollen, painful, and deformed" leg, Sgt. Abdi asked Plaintiff if she could walk to an emergency transport vehicle ("ETV"). Plaintiff replied, "No!" and "continued to cry and scream that [her] leg was broken." Compl., ECF No. 1 at 7; Pl.'s Decl., ECF No. 4 at 4. Officer Chat then "picked [Plaintiff] up," pulled and "thr[ew] [her] to the wall," while repeatedly ordering her to "walk to the ETV on her own accord." *Id.* Plaintiff claims she begged the other responding officers (Rodrin, Quionez, Coleman, Jackson, Abdi, Gonzalez, and RN Bradley) for help, but they "all just stood by and watched [her] drag [her] leg to the ETV in pain and tears." *See* Compl., ECF No. 1 at 7; Pl.'s Decl., ECF No. 4 at 4. After Plaintiff was unable to lift her leg into the rear of the ETV, Officer Gonzalez "grabbed the back of [her] shirt collar" and "drag[ged] her into the rear of the vehicle and onto [a] stretcher." *Id.*

Plaintiff was then taken to the "T.T.A." where a doctor ordered transfer to the emergency room for x-rays. *See* Pl.'s Decl., ECF No. 4 at 4. After the x-rays revealed "three separate fractures in [her] left leg," Plaintiff was hospitalized and underwent emergency surgery during which a 10" metal plate and thirteen pins were implanted "throughout [her] left leg to hold it in place." *See* Compl., ECF No. 1 at 5; Pl.'s Decl., ECF No. 4 at 4. Plaintiff was subsequently housed in the prison infirmary for 3½ months, and had her anti-depressant medication "increased to the max." *Id.*

As currently pleaded, the Court finds Plaintiff's Complaint, together with the sworn declarations she has offered in support, contain "sufficient factual matter, accepted

as true," to state Eighth Amendment claims for relief that are "plausible on [their] face," *Iqbal,* 556 U.S. at 678, and therefore sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm") (citing *Hudson*, 503 U.S. at 7); *United States v. Williams,* 842 F.3d 1143, 1153 (9th Cir. 2016) (the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates'"); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("[A] purposeful act or failure to respond to a prisoner's pain" or serious medical need may violate the Eighth Amendment if that indifference is alleged to have caused harm).

Therefore, the Court will direct the U.S. Marshal to effect service of summons and Plaintiff's Complaint on her behalf.[3] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

///

///

---

[3] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

**III.** **Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $11.98 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and to forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with certified copies of this Order, her Complaint, the exhibits she filed in support (ECF No. 4), and the summons so that she may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying her IFP package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the Defendants as directed by Plaintiff on the USM Form 285s provided to her. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

///

6.     **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7.     **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document she seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court that has not been properly filed with the Clerk or that fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  October 2, 2019

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

3:19-cv-01499-WQH-AHG